**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Eder,<br><br>                Plaintiff,<br><br>v.<br><br>Northern Arizona Consolidated Fire District #1, *et al.*,<br><br>                Defendants. | No. CV-19-8101-PCT-JJT<br><br>**ORDER** |

At issue is Defendants' Motion to Dismiss and Compel Arbitration (Doc. 30, Mot.), to which Plaintiff filed a Response (Doc. 35, Resp.) and Defendants[1] filed a Reply (Doc. 37, Reply). Because the parties' briefs were adequate for the Court to resolve the issues raised in Defendants' Motion, the Court declined to hold oral argument on the briefs. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Defendants' Motion.

**I.     BACKGROUND**

Plaintiff is a former Fire Chief of the Northern Arizona Consolidated Fire District #1 ("NACFD"). Mike Collins, Erik Berg, Carl Hays, John Bryant, and Jim Bailey (together, "Board Members"), were members of NACFD's Board of Directors during the period in which the events leading to this action took place. (Doc. 1, Compl.)

---

[1] For purposes of this Order, "Defendants" refers collectively to the Northern Arizona Consolidated Fire District #1, Mike Collins, Erik Berg, Carl Hays, John Bryant, and Jim Bailey. Defendant Patrick Moore filed his own Motion to Dismiss (Doc. 27), which the Court resolves by separate Order. Defendants Jake Rhoades and the City of Kingman have filed an Answer to the Complaint. (Doc. 10.)

Plaintiff's cause of action stems from the termination of his contract of employment as Fire Chief in May 2018. He alleges that, while he was on temporary medical leave, the Board Members held an unauthorized and illegal meeting in which they voted to terminate him prior to the expiration of his contractual employment term, which was set to either lapse or renew in December 2018. (Compl. at 3.) In connection with this meeting and his resulting termination, Plaintiff alleges nine counts against either NACFD, the Board Members, or both: (1) wrongful termination; (2) breach of contract; (3) breach of good faith and fair dealing; (4) defamation; (5) intentional infliction of emotional distress; (6) *respondeat superior*; (7) conspiracy; (8) intentional interference with contractual relations; and (9) violation of due process under 42 U.S.C. § 1983.

Plaintiff and the NACFD, through Chairperson Patricia Lewin, signed an employment agreement ("the Agreement") embodying the terms of Plaintiff's employment as Fire Chief. (*See* Mot. Ex. A.) The Agreement contained an arbitration clause, which is the subject Defendants' Motion. In relevant part, the provision states: "The parties to this Agreement agree to resolve all disputes arising out of or relating to this Agreement through arbitration to the extent allowed by law. In any event, the parties hereto waive any rights to a trial by jury." (Mot. Ex. A at 6.)

Pursuant to this provision, Defendants moved this Court to either dismiss the action in accordance with the arbitration provision or, alternatively, stay the case and compel arbitration. The Court subsequently requested supplemental briefing from the parties to aid in resolution of Defendants' Motion. (Doc. 38.) Both parties submitted additional briefing. (Docs 39, 40.) The Court now grants the Motion and dismisses the claims against Defendants.

**II.     ANALYSIS**

To resolve a motion to compel arbitration under the Federal Arbitration Act, a district court must determine (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Neither

party disputes the validity of the Agreement or whether the Agreement encompasses the dispute. The Court therefore need not engage in discussion of those two requirements. Accordingly, the only issue for the Court to resolve is the threshold one: whether the Agreement is within the scope of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1 *et seq.* If it is, the Court must order arbitration. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hoffman v. Citibank*, 546 F.3d 1078, 1082 (9th Cir. 2008). Any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

### 1. The Arizona Choice of Law Provision

Plaintiff first argues that the FAA does not apply because the Agreement contains a choice of law provision calling for Arizona law. Paragraph 13 of the Agreement recites: "This Agreement shall be governed by and construed in accordance with the laws of the state of Arizona, in full force and effect as of the date of execution." (Mot. Ex. A at 6.) However, the Ninth Circuit Court of Appeals has enunciated a strong presumption that federal law—specifically, the FAA—supplies the rules of arbitration that govern an agreement to arbitrate. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002). "[A] general choice-of-law clause within an arbitration provision does not trump" this presumption. *Id.* at 1270. Thus, in the absence of the parties manifesting a "clear intent" to have a state's *arbitration* laws govern, the parties' choice of law provision pertains only to the state *substantive* law that governs the construction and interpretation of the Agreement—not to its arbitrability. *Id.* Because the Agreement's Arizona choice of law provision is general and lacks a specific reference to application of Arizona's arbitration laws, the FAA governs the issue of arbitrability.

### 2. Scope of the FAA

Enacted almost a century ago, the FAA reflects a strong federal policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Act carries

preemptive force as well, "withdr[awing] the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Accordingly, the statute lays out a sweeping command of validity, irrevocability, and enforceability of an agreement to arbitrate within "any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The only defenses available to such an agreement are those that "exist at law or in equity for the revocation of any contract." *Id.*

Defendants argue that the FAA applies to the Agreement because it is one "evidencing a transaction involving commerce." (Reply at 3.) Plaintiff contends that it is outside the scope of the FAA because his position as Fire Chief does not "substantially affect interstate commerce." (Resp. at 3.) However, whether something, <u>by itself</u>, "substantially affects" interstate commerce is not the standard under Section 2 of the FAA. Indeed, the Supreme Court found that such a standard gave "inadequate breadth" to the scope of the Act. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Rather, Section 2's "evidencing a transaction involving commerce" provision is co-extensive with Congress's power under the Commerce Clause. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274–75 (1995). In other words, it is quite broad. "[T]he FAA encompasses a wider range of transactions than those actually . . . 'within the flow of interstate commerce.'" *Citizens Bank*, 539 U.S. at 56. Instead, "involving commerce" is the functional equivalent of "affecting" interstate commerce. *Allied-Bruce*, 513 U.S. at 274. If, <u>in the aggregate</u>, the economic activities in question would "bear on interstate commerce in a substantial way," the FAA is triggered. *Citizens Bank*, 539 U.S. at 57 (holding that debt-restructuring agreements executed in Alabama by Alabama residents, where one party's business assets that secured the debt were assembled from out-of-state parts and raw materials, evidenced a transaction involving commerce).

Here, Plaintiff's employment contract[2] with NACFD evidences a transaction involving commerce. In their supplemental briefing, Defendants submitted a declaration of

---

[2] Employment agreements, like any other valid contract, are subject to the FAA so

- 4 -

Jake Rhoades, the current Fire Chief of the NACFD, who averred that he is familiar with the duties of Fire Chief generally and those that Plaintiff specifically undertook during his tenure. (Doc. 39 Ex. 1 at 2.) During a March 2018 meeting, Plaintiff sought authorization from the NACFD Board to purchase two fire engines that cost $228,000 each. (Doc. 39 & Ex. B.)³ The Board approved the expenditure and Plaintiff purchased the equipment from Fouts Bros Fire Equipment in Smyrna, Georgia. (Doc. 39 Ex. C.) NACFD picked up the engines in Texas in April 2018 and remitted payment on May 2 of that year. Plaintiff also made myriad purchases from Cascade Fire Equipment, a company located in Oregon, over the course of his employment. (Doc. 39 & Ex. D.) He oversaw multiple purchases of equipment or services from Fire Flow Technology, a Nevada company; Fire & Police Selection, Inc., a California company; and Firetrucks Unlimited, a Nevada company. (Doc. 39 & Exs. F, G, H.)

In total, Plaintiff coordinated and oversaw hundreds of thousands of dollars' worth of purchases from out-of-state during his time as Fire Chief. These transactions involved shipping or bringing equipment to Arizona and sending payment to businesses located outside of Arizona. The Court readily finds that, in the aggregate (and even standing on their own) these actions bear on interstate commerce in a substantial way. Accordingly, the Court grants Defendants' Motion to Dismiss and Compel Arbitration.

### 3. Application to NACFD and the Board Members

The Court's Order of dismissal applies to the claims against both NACFD and the Board Members. In *Letizia v. Prudential Bache Securities., Inc.*, the court dismissed claims against the defendant securities company, Bache, pursuant to an arbitration provision in the Customer Agreement that the plaintiff had signed with Bache. 802 F.2d 1185, 1187

---

long as they evidence a transaction involving commerce. *See, e.g.*, *Circuit City, Inc. v. Adams*, 523 U.S. 105 (2001).

³ Plaintiff's only submission in his supplemental briefing was a copy of the minutes from an October 2017 Board meeting in which Plaintiff initially raised the issue of purchasing the fire engines. (Doc. 40 Ex. 1.) Plaintiff notes that he was serving as Interim Fire Chief at that time, and thus was not acting under the Agreement. But even if this particular action took place outside the period of Plaintiff's employment under contract, it does not controvert or diminish Defendants' evidence of Plaintiff's significant involvement in interstate commerce while as Fire Chief.

(9th Cir. 1986). The court also dismissed the claims against the plaintiff's account executive at Bache and that account executive's supervisor, even though neither individual had signed the Customer Agreement. *Id.* at 1188. The Ninth Circuit held that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* Here, although the Board Members in the present action did not sign the arbitration agreement themselves, they act on behalf of NACFD generally and acted as agents of NACFD in terminating Plaintiff's employment. *See* A.R.S. § 48-805 ("A fire district, through its board, may . . . [e]mploy any personnel and provide services deemed necessary for fire protection.")

Moreover, the scope of the Agreement's arbitration provision is expansive, covering "all disputes arising out of or relating to" the Agreement. (Mot. Ex. A at 6.) Plaintiff's claims against both NACFD and the Board Members are subject to this broad arbitration provision because they all stem from Plaintiff's alleged wrongful termination of employment—employment whose terms are governed by the Agreement. *See Letizia*, 802 F.2d at 1188 (holding the nonsignatory employees could enforce the arbitration provision because the plaintiff's claims against them "related to" their handling of plaintiff's securities account at Bache, and Bache "clearly indicated its intention to protect its employees through its Customer Agreement").

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss and Compel Arbitration (Doc. 30) as to Plaintiff's claims against Defendants NACFD, Mike Collins, Erik Berg, Carl Hays, John Bryant, and Jim Bailey. The parties are directed to promptly submit this matter to arbitration consistent with the terms of their arbitration agreement and the provisions of the Federal Arbitration Act.

Dated this 29th day of October, 2019.

_____
Honorable John J. Tuchi
United States District Judge